THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

**TRAVIS SETH KNIEP,**
and
**KIMBERLY JOY KNIEP,**

*DEBTORS.*

Case No. 24- 10253-CGB

Chapter 7

**MLO BRANDS, LLC, a Texas Corp.**

*PLAINTIFF*,

v.

**TRAVIS SETH KNIEP,**

*DEBTOR/DEFENDANT.*

Adversary No. _____

## COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

TO THE HONORABLE U.S. BANKRUPTCY JUDGE:

COMES NOW, **MLO Brands, LLC** ("Plaintiff"), by and through their respective counsel of record and files this Complaint to determine that the debt of Travis Seth Kniep ("Debtor" or "Respondent") owed to the Plaintiff is excepted from discharge.

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. sections 157 and 1334. This is a core proceeding.

2. Plaintiff is a Texas Limited Liability Company.

3. The Defendant is one of the induvial Debtors in the above-styled and numbered voluntary Chapter 7 bankruptcy case filed in this Court on March 8, 2024

COMPLAINT TO DETERMINE DISCHARGEABILITY OF A DEBT- Page 1

4. Just One Dime Coaching ("JOD") is a corporation which filed for Chapter 7 relief on November 23, 2023, bearing Case No. 22-10783. JOD is referenced strictly for purposes of setting forth the facts as it pertains to the Defendants. Consequently, no claim is being asserted against JOD which would invoke the automatic stay. JOD is the alter ego of the Defendant and accordingly allegations made against JOD are made against the Defendant.

## I. FACTS

5   Plaintiff incorporates by reference all of the allegations and statements as set forth above.

6. On or about November 6, 2020, Plaintiff by and through JOD entered into a Service Agreement (the "Agreement") according to which JOD would build, manage, optimize, and scale an Amazon store for Plaintiff. The Agreement is attached hereto and incorporated by reference as Exhibit "A".

7. Pursuant to the Agreement, Plaintiffs agreed to pay Defendant by and through JOD $30,000.00 for the service items set forth (the "Payment"). The services are detailed herein: "The Company will perform the following services for the Client:

- Open a new Amazon store for Client and give Company full admin access to the account.
- Research the market for high potential products.
- Find suppliers, build out a differentiation plan and manage the sourcing of the products.
- Manage the design process for retail packaging and company branding.
- Manage all logistics and shipping for the products from the supplier to Amazon's fulfillment centers.
- Create high-conversion listings and oversee photo and video creation for the listings.
- Outline a plan to launch the products on Amazon and scale them as rapidly as possible to high ranking and conversion.
- Create a holistic brand-building strategy for the products on Amazon.

- Split test the Amazon listings for conversion and optimize them for sales.
- Create a follow up sequence for Amazon customers so we can collect their contact info and drive them to a landing page, social media page, or other platform.
- Apply for brand-protection programs on Amazon so that no one can piggy-back the listing.
- Build, test, and optimize Amazon PPC ads on the listings to increase ranking and conversion.
- Strategize new product launches by using PPC reports to find product variations shoppers are searching that no one is selling.
- Build and implement Amazon promotion launches, create Amazon-compliant motivation for organic 5-star reviews, and improve the listings conversion based on PPC keyword reports.
- Identify and leverage trends for new products we can launch as complements to the main product.
- Differentiate the Amazon listing and products from competition Amazon.
- Ensure we are Amazon compliant and brand proof so the Amazon account remains healthy.
- Test various product lines on Amazon for real time customer feedback and proof of concept to determine the most profitable products to launch first.
- Identify and address hijackers, copycats, and copyright-infringing competitors.
- Respond to critical reviews and negative seller feedback.

8. The Individual Defendant perpetrated a fraud on Plaintiff and, on information and belief, did not intend to perform such services either through JOD or personally. In fact, not even a single service item set forth above was completed.

9. While such failure to perform was a breach of JOD of its obligations under the contract, Defendant further individually and personally continued to make false representations and fraudulent statements to Plaintiff concerning their personal conduct, specifically re-assuring them personally of the intent and capacity of JOD to perform under the contract.

10. On information and belief, Defendants took personal possession of the payment made by Plaintiff to JOD and, in the absence of performance, refused to refund same to Plaintiff.

11. Defendant had and has total control of the JOD.

12 On or about October 14, 2022, Plaintiff was notified via email that JOD was shutting down their activities and that refunds were not an option. *See* Exhibit "B".

13. A demand letter concerning the issues detailed above was sent to both JOD and Defendants on October 27, 2022. *See* Exhibit "C".

14. As stated above, JOD has filed for a Chapter 7 Bankruptcy proceeding. *See* Exhibit "D".

## PIERCING CORPORATE VEIL BASED ON EXISTENCE OF ACTUAL FRAUD & SIMILAR CLAIMS

15. Plaintiff incorporates by reference all of the allegations and statements as set forth above and below and adds the following:

16. The Texas Business Organization Code Ann. §21.223(b) states that if a "holder, beneficial owner, subscriber, or affiliate of the obligee demonstrates that the holder, beneficial owner, subscriber, or affiliate caused the corporation to be used for the purpose of perpetrating and did perpetrate an *actual fraud* on the obligee primarily for the direct personal benefit of the holder, beneficial owner, subscriber, or affiliate, then said holder, beneficial owner, subscriber, or affiliate can be held personally liable for any damages incurred." (emphasis added).

17. Although "actual fraud" is not statutorily defined, courts have construed that term, for purposes of piercing the corporate veil, as "involv[ing] dishonesty of purpose or intent to deceive." *Tryco Enters., Inc. v. Robinson*, 390 S.W.3d 497, 508 (Tex. App.— Houston [1st Dist.] 2012, pet. dism'd); see T*ecLogistics, Inc. v. Dresser–Rand Grp., Inc.*, 527 S.W.3d 589, 598 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

18	In the context of piercing the corporate veil, actual fraud is not equivalent to the tort of fraud; instead, in that context, actual fraud involves dishonesty of purpose or intent to deceive. *Latham v. Burgher*, 320 S.W.3d 602 (Tex. App. 2010).

19.	As above alleged, *Defendant by and through JOD failed to deliver a single completed product out of a list of 20 (twenty items)*. Such conduct is direct evidence of fraud and fraud in the inducement, as Defendants, by and through JOD, retained the payment at inception with no intent whatsoever of performing. Defendants, by and through JOD, had total control of JOD.

20.	Moreover, the same abject lack of performance at inception commensurate with receipt of the Payment evidences misrepresentation, conversion, deceptive trade practices, civil conspiracy, and the other causes alleged. The claims below plead, further buttress the legal sufficiency of a piercing of the veil claim in these egregious and extraordinary circumstances.

## PIERCING CORPORATE VEIL – UNANIMITY AND SINGULARITY OF CONTROL & ALTER EGO FACTORS

21.	Plaintiff incorporates by reference all of the allegations and statements as set forth above.

22.	"Alter ego" applies when there is such unity between a corporation and an individual that the separateness of the corporation has ceased and holding only the corporation liable would result in an injustice. *Nichols v. Tseng Hsiang Lin*, 282 S.W.3d 743 (Tex. App. 2009). & C. § 21.223(a)(2).

23.	Direct veil piercing, reverse piercing is appropriate "where a corporation is organized and operated as a mere tool or business conduit of another" and "there is such 'unity between corporation and individual that the separateness of the corporation has ceased' and

holding only the corporation or individual liable would result in injustice.'" *Richard Nugent & CAO, Inc. v. Estate of Ellickson*, 543 S.W.3d 243, 266 (Tex. App.— Houston [14th Dist.] 2018, no pet.) *Wylie v. Simmons*, No. 02-19-00241-CV, 2020 WL 7776796, at *19 (Tex. App. Dec. 31, 2020).

24. Defendant had total control of JOD.

25. Defendants has used JOD as their alter ego to commit violative acts and are therefore, independently and personally liable for their misconduct. Defendants engaged in self-dealing, and directly injured Plaintiff through a fraudulent scheme to procure Payment without the requisite intent to perform any services. The LLC entity was thus employed as an artifice to accomplish fraudulent and illegal ends and is, therefore, an alter ego of the Defendants.

26. The Defendant, by and through JOD acted maliciously and fraudulently, causing financial harm to Plaintiff.

**COUNT I – NONDISCHAREGABLE DEBT FOR MONEY OBTAINED BY FALSE PRETENSES, FALSE REPRESENTATION OR ACTUAL FRAUD**

27. Plaintiff incorporates by reference all of the allegations and statements as set forth above.

28, Defendant personally represented to Plaintiff that they would cause JOD to perform and had the requisite knowledge to do so.

29. Defendant' representations to Plaintiff are a false promise of performance.

30. Defendant made such representations knowing they were false.

31. Plaintiff justifiably relied on Defendant's false representation when he entered into a contract with Defendant through JOD.

32. Defendant's false representation directly and proximately caused injury to Plaintiff. Defendants' misrepresentations about their ability to abide by the terms of the agreement directly caused Plaintiff's injuries.

33. Plaintiff incorporates by reference all of the allegations and statements as set forth above.

34 Defendant, by and through JOD, represented to Plaintiff that they would perform and had the knowledge to do so.

35. Defendant's representation to Plaintiff was a false promise of performance.

36. Defendant made the false representation knowing it was false.

37. Defendants manifested the intent to deceive Plaintiff at the inception of the Agreement with no intent to perform.

38. Plaintiff justifiably relied on Defendant's false representation when he entered into a contract with Defendant.

39. Defendant's false representation directly and proximately caused injury to Plaintiff.

40. Defendant's misrepresentations about JOD's ability to abide by the terms of the agreement directly caused Plaintiff's injuries.

41. Plaintiff incorporates by reference all of the allegations and statements as set forth above.

42. Defendant, by and through JOD, represented that they would carry on the work as contracted.

43. Defendant represented that he had the knowledge and expertise to successfully execute agreement.

44. Defendant made the representation in the course of JOD's business relationship with the Plaintiff.

45. A defendant can be held personally liable for negligent misrepresentation if (1) a representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation. *Zaan, LLC v. Sangani*, No. 05-12-00423-CV, 2015 WL 2398652 (Tex. App.—Dallas May 20, 2015, pet. denied).

46. That the false information was given in the course of or in relation to Defendants' business, profession, or employment is sufficient to prove the Defendants had a pecuniary interest in the representation.

47 Plaintiff actually and justifiably relied on Defendants' representations.

48. Plaintiff was damaged by justifiable reliance on Defendants' misrepresentations in the amount of $30,000.00. Plaintiff was further damages by lost profits in the amount of $151,630.00, and further damages by the expenditure of funds to establish a retail business that never opened. Additionally, Plaintiff is entitled to recovery of all costs of court, pre- and post-judgment interest, as well as attorney's fees pursuant to TEX. CIV. PRAC. & REM. CODE § 38.001 et seq. (the "Plaintiff's Damages or "Plaintiff's Claim").

49. Accordingly, Plaintiff's claim is nondischargable pursuant to 11 U.S.C section 5239(a)((2)(A).

## COUNT II – NONDISCHARGEABILITY FOR WILLFUL AND MALICIOUS INJURY

50. Plaintiff incorporates by reference all of the allegations and statements as set forth above.

51. To prove conversion, Plaintiff must show 1) it had legal possession of, or was entitled to, possession of the property; 2) Defendants assumed and exercised dominion and control over the property in an unlawful and unauthorized manner to the exclusion of, and inconsistent with, Plaintiff's rights; and 3) Defendants refused plaintiff's demand for return of the property. Texas Dept. of Transp. v. Crockett , 257 S.W.3d 412, 416 (Tex. App. — Corpus Christi 2008).

51. Defendant is personally liable for conversion.

    a. Plaintiff s had legal possession of the funds.

    b. Defendants, acting through JOD or individually, took, assumed, and exercised exclusive dominion and control over the property in an unlawful and unauthorized manner to the exclusion of, and inconsistent with, Plaintiff's rights and the representations made to Plaintiff by Defendants and their personal representatives and agents.

    c. The Plaintiff demanded return of the converted funds, but the Defendant still refused Plaintiff's demand for return of the property.

52. Plaintiff is entitled to the restitution of the funds at the time and place of the conversion, the value of the companies' properties converted by Defendants, and prejudgment interest from the date of conversion as provided by law.

53. Plaintiff was damaged by Defendants' violations of the implied warranty of good and workmanlike services in the amount of Plaintiff's Damages and is entitled to recovery of that

amount plus interest, costs, and attorney's fees pursuant to TEX. CIV. PRAC. & REM. CODE § 38.001 *et sec,* and its entire Plaintiff's Claim against the Defendant.

54. The actions, representations, misrepresentation, material omissions and conversion of the funds of the Plaintiff by the Defendant constitute a willful and malicious injury to the Plaintiff caused by the Defendant and accordingly the Plaintiff's Claim is nondischargeable pursuant to 11 U.S.C. section 523(a)(6).

**COUNT III – DEFENDANT'S PERSONAL LIABILITY FOR PLAINTIFF'S CLAIM**

55. Texas law makes clear that a corporation's employee, agent, or representative may be "personally liable for tortious acts which he directs or participates during his employment" *Leyendecker & Assocs., Inc. v. Wechter,* 683 S.W.2d 369, 375 (Tex.1984). The law is well-settled that a corporate agent can be held individually liable for fraudulent statements or knowing misrepresentations even when they are made in the capacity of a representative of the corporation. *See, e.g., Commercial Escrow Co. v. Rockport Rebel, Inc.,* 778 S.W.2d 532, 541 (Tex.App.-Corpus Christi 1989, writ denied).

56. The *Commercial Escrow* Court states:

> "A corporate officer who knowingly participates in tortious or fraudulent acts may be held individually liable to third persons even though he performed the act as an agent of the corporation. It is not necessary that the 'corporate veil' be pierced in order to impose personal liability, as long as it is shown that the corporate officer knowingly participated in the wrongdoing" *Id.* at 541.

57. The Texas Supreme Court has repeatedly and specifically affirmed the principle that DTPA misrepresentations made by a corporate agent can subject the agent to individual liability. *Weitzel v. Barnes,* 691 S.W.2d 598, 601 (Tex.1985). The court held that two corporate officers found to have made representations that violated the DTPA could be held individually liable for those representations, even though the representations were made in the course of a

business transaction conducted in the course and scope of their employment with the corporation. *Weitzel,* 691 S.W.2d at 601; *see also Kinkler v. Jurica,* 84 Tex. 116, 19 S.W. 359 (1892); *Seale v. Baker,* 70 Tex. 283, 7 S.W. 742 (1888).

58. No subsequently enacted statutory shield or protection from liability for agents or corporate directors extends to the Defendants under Texas law because the Defendants acted in bad faith with individual intention for personal gain, against the corporation's best interests, and with direct, actual and constructive knowledge of the fraudulent and deceptive conduct.

59. "If a corporate officer knowingly participates in a tortious act, there is no need to pierce the corporate veil in order to impose personal liability." *Walker v. F.D.I.C.*, 970 F.2d 114, 122 (5th Cir. 1992); *Sanchez v. Mulvaney*, 274 S.W.3d 708, 712 (Tex. App.–San Antonio 2008, no pet.); *Walker v. Anderson*, 232 S.W.3d 899, 918 (Tex. App.–Dallas 2007, no pet.) ("It is not necessary to pierce the corporate veil in order to impose personal liability, as long as it is shown that the corporate officer knowingly participated in the wrongdoing."). See also *Bates Energy Oil & Gas v. Complete Oilfield Services*, 361 F. Supp. 3d 633, 666 (W.D. Tex. 2019)

.

## PRAYER

89. **WHEREFORE, THE FOREGOING CONSIDERED,** Plaintiff respectfully requests that it be granted a nondischarable money judgment for Plaintiff's Claim with respect to all causes of action asserted herein, and hereby requests that Defendant be cited to appear and answer and that on final trial Plaintiff receive and have:

A nondischargable judgment for exemplary damages against the Defendant to be determined by the Court, and

A nondischargable judgment against Defendant in the amount of $30,000.00 in out-of-pocket damages, and $151,630 in lost profits, for a total non-dischageabke judmgent in the amount of $181,630.00; and

A nondischargeable judgment against Defendant for lost expenses damages, and

A nondischargeable Judgment against Defendant for attorneys' fees incurred in this matter; and

A nondischargeable judgment against the Defendant for pre- and postjudgement interest; and

A nondischargeable judgment against Defendant for all costs of court; and

Such other and further relief, at law or in equity, to which the Honorable Court deems the Plaintiff entitled.

Respectfully submitted,

**THE MOSTER LAW FIRM, P.C.**

<u>/s/William P. Rossini</u>
William P. Rossini
State Bar No 17309480
4920 S. Loop 289, Suite 103-A
Lubbock, TX 79414
Tel: (806) 778-6486
Fax: 866-302-7046
william@themosterlawfirm.com

*Attorney for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that the above Adversary Complaint was served on the 14th day of May 2024, upon the following, electronically or by first class United States mail.

*Debtor's Counsel*
Michael Baumer
Law Offices of Michael Baumer
Box 1818 Liberty Hill, TX 78642

*Case Trustee*
John Patrick Lowe
2402 East Main Street
Uvalde, TX 78801

*Office of the United States Trustee*
Attn.: Shane B. Tobin
903 San Antonio Blvd. Rm. 230
Austin, TX 78701

                                                    **/s/William P. Rossini**
                                                    William P. Rossini